**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| NANCY MILLER, | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | CIVIL ACTION H-07-3230 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY | § | |
| *Defendant.* | § | |

**OPINION ON SUMMARY JUDGMENT**

This social security case is before the court on plaintiff Nancy Miller's and Commissioner Michael Astrue's cross-motions for summary judgment. (Dkts. 19, 20). For the reasons that follow, the court denies Miller's motion and grants the Commissioner's.[1]

**Background**

Miller is a fifty-eight year old woman with an eleventh grade education who suffers from diabetes, retinopathy, hypertension, asthma, coronary artery disease, and other ailments. Before she applied for social security disability benefits on January 15, 2002, Miller worked variously as an intake coordinator for a health insurance company, a data entry clerk, a mail clerk, a file clerk, and an accounts payable clerk. According to Miller, she became disabled on July 27, 2001 after she underwent coronary artery bypass surgery.

---

[1] The parties have consented to jurisdiction before this magistrate judge for all proceedings, including final judgment. (Dkt. 15.)

After a hearing, an Administrative Law Judge (ALJ) denied Miller's application for benefits on the grounds that she was not disabled. On appeal, Social Security Appeals Council vacated the ALJ's decision because it could not find the record on which it was based.

Another hearing was held and a second ALJ denied Miller's application for the same reason. This time, the Appeals Council refused to review the ALJ's decision, making it the final decision of the Social Security Commissioner in Miller's case. Miller then filed this appeal.

**Standard of Review**

Federal courts review final decisions of the Social Security Commissioner under the "substantial evidence" standard. Under this deferential standard, the court reviews the Commissioner's decision to determine only if (1) the Commissioner applied the correct legal rules and (2) the Commissioner's decision was supported by substantial evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). It must be "more than a mere scintilla" but can be "less than a preponderance." *See Masterson*, 309 F.3d at 272. Consequently, the substantial evidence standard

sometimes requires a federal court to uphold the Commissioner's decision even when it believes that most of the evidence weighs against it. *See id.*

**Disability Evaluation**

The Commissioner employs a five-step inquiry to determine whether a claimant is disabled and thus entitled to disability benefits:

1. Is the claimant engaged in substantial gainful activity, i.e. working? If so, the claimant is not disabled. If not, the inquiry proceeds to question two.

2. Does the claimant have a severe impairment? If not, the claimant is not disabled. If so, the inquiry continues to question three.

3. Does the severe impairment meet one of the listings set forth in the regulation known as Appendix 1? If so, the claimant is disabled. If not, the inquiry continues to question four.

4. Can the claimant still perform past relevant work? If so, the claimant is not disabled. If not, the inquiry proceeds to question five.

5. Considering the claimant's age, education, work experience, and residual functional capacity, is there work that the claimant can do? If so, the claimant is not disabled. If not, the claimant is disabled.

*See* 20 C.F.R. § 404.1520(a)(4)(I)-(v) (2008); *Newton*, 209 F.3d at 453. At the first four steps, the claimant bears the burden of proof; at the final step, the Commissioner does. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

**Analysis**

At steps one and two, the ALJ found that Miller had not been engaged in

substantial gainful activity and had four severe impairments: asthma, diabetes with retinopathy, hypertension, and coronary artery disease bypass.[2] But at steps three and four, the ALJ concluded that none of these four severe impairments met any of the listings in Appendix 1 and that Miller could still perform her past relevant work as a data entry clerk, intake coordinator, and accounts payable clerk, all jobs that require only sedentary levels of exertion.[3]

Miller raises three challenges to the ALJ's decision. First, she contends that the ALJ erred in ruling at step three that her coronary artery disease did not meet Listing 4.04(C) of Appendix 1. Second, she claims that the ALJ improperly disregarded her subjective complaints of disability. Finally, she argues that the ALJ erred in relying on the testimony of a vocational expert in finding that she was still able to perform her past relevant work as a data entry clerk, intake coordinator, and accounts payable clerk. The court treats each argument in turn.

**1. Listing 4.04(C)**

At the time Miller applied for disability benefits, a claimant met Listing 4.04(C) if the claimant presented (1) "[a]ngiographic evidence showing" (2) "[t]otal obstruction of a bypass graft vessel" that (3) "[r]esulted in marked

[2] Tr. at 22.

[3] *Id.* at 23, 26.

limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest."[4] 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.04(C)(1)(e)-(C)(2) (2001). In finding that Miller did not meet Listing 4.04(C), the ALJ did not cite specific parts of the record but instead generally declared that the record revealed that Miller's coronary artery disease was "not of listing severity."[5]

Both Miller and the Commissioner agree that the record before the ALJ contained angiographic evidence showing total obstruction of a bypass graft vessel, and therefore the ALJ's must have based his conclusion on Listing 4.04(C)'s third element—"marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest."[6] But Miller and the Commissioner differ in their interpretation of that element.

---

[4] Under the current version of Listing 4.04(C), the claimant need only present (1) "[a]ngiographic evidence showing" (2) "70 percent or more narrowing of a bypass graft vessel" (3) "[r]esulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living." 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.04(C)(1)(e)-(C)(2) (2008).

[5] *Id.* at 24.

[6] *See* Pl.'s Mot. Summ. J. at 5 (pointing to a July 2003 heart catheterization report that indicated the middle segment of Miller's left anterior descending coronary artery was totally blocked); Def.'s Resp. at 5 (conceding the same); *see also* Tr. at 480-81 (July 2003 heart catheterization report noting that Miller's 2001 bypass surgery bypassed her "LAD" [i.e. left anterior descending coronary artery] and finding that the "middle segment" of her LAD was "totally occluded.").

Miller reads Listing 4.04(C)'s third element to require only the presence of any one of its four enumerated symptoms: fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity. Once the claimant proves that he or she has one of these symptoms, the claimant has proven ipso facto that he or she has "marked limitation of physical activity." Miller points to two places in the record that purportedly show that she suffers from fatigue and anginal discomfort on ordinary physical activity.[7] Because she has proven that she has fatigue and anginal discomfort on ordinary physical activity, Miller claims that the ALJ's conclusion that she failed to meet Listing 4.04(C) was not supported by substantial evidence.

The Commissioner, on the other hand, reads Listing 4.04(C)'s third element to require the presence of all four symptoms. Though Miller did present evidence that she suffered from fatigue and anginal discomfort on ordinary physical activity, she did not present evidence of dyspnea or heart palpitations. Additionally, the Commissioner interprets the presence of all four symptoms to be a necessary, but not sufficient, condition for a claimant to prove that he or she also has "marked limitation of physical activity." Miller has not only failed to prove that she has all

[7] See Tr. at 574-75 (transcript of Miller's hearing testimony that she suffers chest pain when she walks too far and that she generally has "no energy level"), 187 (2003 radiology report noting that an exercise test on Miller was stopped due to "fatigue").

four symptoms, she has also failed to prove that the symptoms she does have resulted in a marked limitation of her physical activity. Therefore, the Commissioner's decision was in fact supported by substantial evidence.

The parties have not pointed to any social security rulings or cases interpreting this element of Listing 4.04(C), and the court has found none. Reading the regulation according to its plain meaning, the court finds that the correct interpretation of Listing 4.04(C) falls between the Commissioner and Miller's accounts. *See, e.g.*, *Caminetti v. United States*, 242 U.S. 470, 485 (1917) ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms.").

The four symptoms in Listing 4.04(C) are set out disjunctively, indicating that, contrary to the Commissioner's reading, only one symptom—not all four—must be present for the claimant to meet the listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.04(C)(2) (requiring "marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, *or* anginal discomfort on ordinary physical activity") (emphasis added); *Quindlen v. Prudential Ins. Co. of Am.*, 482 F.2d 876, 878 (5th Cir. 1973) ("[A]s a general rule, the use of a disjunctive in a statute indicates alternatives and requires that those alternatives be treated separately."). But the four symptoms also modify the phrase "marked limitation

of physical activity," signaling that, contrary to Miller's interpretation, "marked limitation of physical activity" is what the claimant must ultimately show *via* one or more of the symptoms. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.04(C)(2) (requiring "marked limitation of physical activity, *as demonstrated by* fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity") (emphasis added); *Sierra Club v. Johnson*, 541 F.3d 1257, 1266 (11th Cir. 2008) (noting that the "plain meaning of the word 'demonstrate'" is "'to show clearly' or 'to prove or make clear by reasoning or evidence'") (quoting MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 308 (10th ed. 1999)). If the claimant merely had to prove the presence of one of the symptoms without also having to prove how the symptom caused "marked limitation of physical activity," the phrase "marked limitation of physical activity" would be superfluous. And, of course, courts must interpret regulations, when possible, to avoid surplusage. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001).

Under a reading of Listing 4.04(C) that gives effect to both the disjunctive list of symptoms and the phrase "marked limitation of physical activity," the ALJ's decision was supported by substantial evidence. Though Miller presented evidence that she suffered from fatigue and anginal discomfort, other record evidence tended to show that these symptoms did not result in a marked limitation of physical activity. The court need only pick out a few examples:

- A nuclear cardiology report dated December 10, 2001 and signed by Miller's treating physician, Dr. Earl Mangin, Jr., found that Miller was able to exercise on a treadmill for seven minutes.[8]

- In a letter dated July 30, 2002, Dr. Mangin wrote that Miller's coronary artery disease prevented her from holding down a "*meaningful* job" because it did not allow her to perform "*strenuous* physical activity." Dr. Mangin's did not opine that Miller was so disabled she could not perform any job, and his careful choice of words suggest that his failure to give such an opinion was not a careless omission.[9]

- A physical assessment report dated March 15, 2002 and signed by Dr. Frederick Cremona, found that Miller was capable of regularly lifting up to twenty-five pounds and occasionally lifting up to fifty pounds. He concluded that Miller could sit and stand, with breaks, for about six hours in a normal eight hour work day. Dr. Cremona measured Miller's METS (metabolic equivalents) at seven, which was within normal range. Though Dr. Cremona did not note Miller's complaints of fatigue, he did note Miller's complaints of chest pain but ultimately concluded that her claimed limitations were "not supported" by the medical evidence.[10]

- A radiology report from the People's Clinic, dated March 21, 2003, revealed that Miller could exercise on a treadmill for six minutes and fifteen seconds. Though the report noted that the exercise was stopped due to Miller's fatigue, it did not make any findings concerning whether Miller's fatigue was so severe that it markedly limited her physical activity.[11]

- Another radiology report, dated February 9, 2004, concluded that Miller had "[n]o acute cardiopulmonary disease."[12]

---

[8] *Id.* at 144, 145.

[9] *Id.* at 440 (emphasis added).

[10] *Id.* at 85, 89, 91.

[11] *Id.* at 426.

[12] *Id.* at 371.

Though the ALJ did not cite any of this record evidence in deciding that Miller did not meet Listing 4.04(C), he was not required to. *See Bullock v. Astrue*, 277 Fed. App'x 325, 327-28 (5th Cir. 2007) (holding that an ALJ is not required "to articulate the reasons supporting his finding under step three"). Though specific references to the record would have been helpful, this court's role is not to grade the thoroughness of the ALJ's opinion but instead to determine whether the ALJ's decision on this issue was supported by substantial evidence. *See id.* at 328. Collectively, despite Miller's contrary testimony, this evidence was sufficient to cause a reasonable mind to conclude that Miller's fatigue and anginal discomfort did not markedly limit her physical activity and, therefore, Miller did not satisfy Listing 4.04(C).[13] The ALJ's decision that Miller did not meet Listing 4.04(C) was thus supported by substantial evidence.

**2. Subjective Complaints**

Under Social Security Ruling 96-7p (SSR 96-7p), an ALJ who rejects a claimant's subjective complaints of pain or other symptoms must give specific

[13] Miller complains further that the ALJ failed to fully develop the record by not calling a medical expert to testify about whether she met Listing 4.04(C). Undoubtedly, a medical expert's testimony would have more fully developed the record. But an ALJ's failure to call a medical expert does not mandate reversal of the ALJ's decision unless the claimant shows that he or she would have adduced evidence from the expert that would have changed the ALJ's decision. *See Atkins v. Barnhart*, 119 Fed. App'x 672, 673 (5th Cir. 2005) (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). Miller has not told the court what additional evidence she would have elicited from the medical expert that would have changed the ALJ's decision.

reasons, supported by the record, for disbelieving the claimant. *See Onishea v. Barnhart*, 116 Fed App'x 1, 1 (5th Cir. 2004). Miller contends that the ALJ violated SSR 96-7p by not giving specific reasons for rejecting her many subjective complaints at step four of the inquiry. She also argues that this error requires an automatic reversal of the ALJ's decision without regard to whether the ALJ's supported by substantial evidence.

Miller is wrong on both counts. First, the ALJ followed SSR 96-7p by explaining that he disbelieved Miller because the "medical evidence" showed that her condition was "not disabling as she claims."[14] He also examined numerous pieces of evidence in the record, including evidence the court has cited above, to support his conclusion.[15] Second, even if the ALJ had violated SSR 96-7p, an ALJ's violation of a Social Security Ruling does not result in an automatic reversal unless it "cast[s] into doubt the existence of substantial evidence to support the ALJ's decision."[16] *See Barbee v. Barnhart*, 2002 WL 31688886, at *1 (5th Cir. Oct. 29, 2002) (citing *Morris v. Brown*, 864 F.2d 333, 335 (5th Cir. 1988)). The record

[14] *Id.* at 25.

[15] *See id.* at 25-26.

[16] Even the non-social security cases Miller cites to support her position do not actually support it. *See Alamo Express, Inc. v. United States*, 613 F.2d 96, 98 (5th Cir. 1980) ("'If an agency in its proceedings violates its rules *and prejudice results*, any action taken as a result of the proceedings cannot stand.'") (emphasis added) (quoting *Pacific Molasses Co. v. F.T.C.*, 356 F.2d 386, 389-90 (5th Cir. 1966)).

evidence cited by the ALJ, however, was substantial enough to support the ALJ's ultimate conclusion that Miller was not disabled.

**3. Vocational Expert Testimony**

Finally, Miller claims that the ALJ erred in finding that Miller could perform her past work as a data entry clerk, intake coordinator, and accounts payable clerk by relying on the testimony of vocational expert Emma Vasquez. She alleges that Vasquez's testimony that she could perform her past sedentary jobs was based on the following hypothetical question asked by the ALJ that erroneously failed to incorporate her subjective complaints:

> Q. Okay. Now, based on [Miller's] age, education and past work experience, *assume that I find that she can do a full range of sedentary work*, except that she has to be in a clean air, indoor environment. Could she do any of her last jobs, any of her —
> A. Yes, sir.
> Q. Which ones, please?
> A. The data-entry, the intake coordinator and the accounts payable clerk.[17]

The ALJ relied exclusively on Vasquez's testimony in holding that Miller could perform her past work in these jobs. Because the ALJ's holding was based on a hypothetical that did not include her subjective complaints, argues Miller, the ALJ's decision was not supported by substantial evidence. Indeed, Miller claims that when her counsel supposedly asked Vasquez a hypothetical incorporating her

---

[17] Tr. at 580 (emphasis added).

subjective complaint of fatigue, Vasquez responded that there was "no work" that Miller could perform.[18]

Miller misstates the law. When an ALJ poses a hypothetical question to a vocational expert, the question does not have to incorporate the claimant's subjective complaints—only impairments ultimately recognized by the ALJ in his decision. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). As explained above, the ALJ rejected Miller's subjective complaints of disabling fatigue as not credible in light of numerous pieces of evidence to the contrary. Though the ALJ did not specifically list in his hypothetical the impairments he ultimately found—asthma, diabetes with retinopathy, hypertension, and coronary artery disease bypass—none of these impairments, as the ALJ demonstrated in his discussion of the record evidence, were severe enough to prevent Miller from performing sedentary work. Thus, the ALJ's hypothetical question, which assumed that Miller could perform only sedentary work, implicitly incorporated all of the disabilities that the ALJ ultimately found. And, therefore, the ALJ did not err in relying on the vocational expert's testimony elicited by his hypothetical.

Vasquez's testimony that Miller could perform "no work"—even sedentary work—was elicited only in response to a hypothetical question from Miller's

---

[18] *Id.* at 582.

counsel that assumed that Miller's fatigue was so severe it would require her to take every other day off from work.[19] But, in his opinion, the ALJ pointed to ample medical evidence, including the evidence discussed earlier, that suggested Miller's fatigue was not so disabling.[20] Consequently, this portion of Vasquez's testimony, which relied on an assumption that the ALJ rejected in light of the medical evidence, does not undermine the court's conclusion that substantial evidence supported the ALJ's decision.

## Conclusion

The ALJ's decision rejecting Miller's application for social security disability benefits was based on the correct legal standards and was supported by substantial evidence. Accordingly, Miller's motion for summary judgment is denied and the Commissioner's is granted. The court will issue a separate final judgment.

Signed at Houston, Texas on January 28, 2009.

Stephen Wm Smith
United States Magistrate Judge

---

[19] *Id.* at 581-82. Miller did not testify that her fatigue was so severe that she required extra sleep on alternating days. Rather, she testified only that she could "sleep the whole next day" if she had "a busy night." *Id.* at 569.

[20] *Id.* at 25-26. For example, though Miller testified that her fatigue was caused in part by "REM behavior sleep disorder," *id.* at 569, a test conducted by the Harris County Hospital District Sleep Disorder Center in October 2005 found that Miller's REM sleep was "within normal limits." *Id.* at 454.